UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| RANDY WILLIAMS, #279404, | ) | C/A No.  4:08-2312-SB-TER |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| vs | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| WARDEN, Lee Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## I.    INTRODUCTION

Petitioner, Randy Williams, (Petitioner/Williams) is an inmate in the custody of the South

Carolina Department of Corrections (SCDC). Petitioner, appearing pro se, filed his petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on June 25, 2008.  Respondent filed a motion

for summary judgment on November 17, 2008, along with a return and supporting memorandum.

The undersigned issued an order pursuant to  Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975),

advising Petitioner of the motion for summary judgment procedure and the possible consequences

if he failed to file a response.  Petitioner filed a response in opposition to the motion for summary

judgment on December 17, 2008.

## II.    PROCEDURAL HISTORY

The procedural history as set out by the respondent has not been seriously disputed by the

petitioner. Therefore, the undisputed procedural history as stated by the respondent is set forth

herein.

---

[1] This habeas corpus case was automatically referred to the undersigned United States
Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02,
DSC.  Because this is a dispositive motion, this report and recommendation is entered for review
by the district judge.

Petitioner is presently confined to Allendale Correctional Institution pursuant to Orders of Commitment from the Clerk of Court from Marlboro County. At the June 2001 term, the Marlboro County Grand Jury indicted Petitioner for distribution of crack cocaine (01-GS-34-0595) {PCR App. 289-91} and distribution of crack cocaine within ½ mile radius of a playground (01-GS-34-0594) {PCR App. 292-93}.

Petitioner was represented at the trial level by public defender Wade R. Crow. From October 22nd to 23rd, 2001, Petitioner went to trial before the Honorable Edward B. Cottingham and a jury. The jury convicted Petitioner as charged, and Judge Cottingham sentenced Petitioner to twenty (20) years on the distribution charge and a concurrent ten (10) years on the proximity charge. {PCR App. 202; 296-97}.

A timely notice of appeal was filed. Tara S. Taggart, of the South Carolina Office of Appellate Defense, was appointed to represent Petitioner in his direct appeal. On October 4, 2002, Taggart filed a "no merit" <u>Anders</u> Final Brief of Appellant and Petition to be Relieved as Counsel, in which she raised the following issue:

> Whether the trial judge erred in failing to grant a directed verdict based upon the insufficiency of the evidence.

Petitioner filed a pro se brief.

On March 10th, 2003, the South Carolina Supreme Court issued an opinion in which it dismissed the appeal following <u>Anders</u> review. <u>State v. Williams</u>, Memo. Op. No. 03-MO-021 (S.C. March 10th, 2003). {PCR App. 213}. The Remittitur was issued on March 28th, 2003.

Applicant next filed a pro se Application for Post-Conviction Relief ("APCR") on April 8th, 2003 (03-CP-34-0128), in which he asserted the following issues:

1.    Trial Counsel fail to interview and call alibi witnesses that were relevant (sic).

2.    Trial Counsel fail to object to improper committs of trial Judge. Trial Counsel fail to object to the charge being up graded to second offense without the State receiving another warrant or indictment (sic).

3.    Appellate Counsel deceive applicant when stated she had documents from SLED. When in Fact she did not which cause further prejudice of applicant on his appeal (sic).

{PCR App. 207}. The State filed a Return on July 10th, 2003. {PCR App. 214}. Petitioner followed with a pro se "Motion to Amend" dated May 7th, 2004, in which he raised the following claims:

1.    14th Amendment violation.

2.    Prosecution Misconduct/Brady violation.

3.    Rule 5 – Disclosure violation.

An evidentiary hearing in Petitioner's PCR was held before the Honorable John M. Milling on January 12th, 2005. {PCR App. 219}. Petitioner was present and represented by counsel Russell V. Traw, Esquire. Petitioner called himself to testify at the hearing; the State called trial counsel. Judge Milling orally denied relief at the conclusion of the hearing, and on February 9th, 2005, signed an order of dismissal in which he rejected Petitioner's claims for relief. {PCR App. 280}.

A timely notice of appeal was then filed with the South Carolina Supreme Court from the APCR Order of Dismissal. Wanda H. Carter, of the South Carolina Office of Appellate Defense, was appointed to represent Petitioner in his APCR1 appeal. On November 3rd, 2005, Carter filed a "no merit" Johnson Petition for Writ of Certiorari and Petition to be Relieved as Counsel, in which she raised the following issue on behalf of Petitioner:

The PCR court erred in dismissing petitioner's defective indictment claim.

The State filed a letter Return to the certiorari petition on November 4th, 2005.

The case was subsequently transferred to the South Carolina Court of Appeals by order dated February 15th, 2006. On June 28th, 2007, the South Carolina Court of Appeals issued an order in which it denied the Petition for Writ of Certiorari after Johnson review. The Remittitur was issued on July 16th, 2007.

## III.    GROUNDS FOR RELIEF

The following grounds are raised in the Petition:

**Ground One**: Ineffective assistance of counsel.

**Supporting Facts**: After receiving my file, it had evidence that my counsel never presented to me or the court

**Ground Two:** Brady violation.

**Supporting Facts: :** Paperwork was submitted to me the day of my trial and years after my trial.

**Ground Three:** Prosecution misconduct.

**Supporting Facts:** The solicitor entered an inaudible tape into evidence and she withheld paperwork.

**Ground Four:** Rule 5 disclosure violation.

**Supporting Facts:** Chain of Custody form A, B, and C wasn't turned over during discovery.

**Ground Five:** 8th Amendment cruel and unusual punishment.

**Supporting Facts:** I was indicted and sentenced under an offense that I was never arrested nor indicted for.

**Ground Six:** Subject Matter Jurisdiction.

**Supporting Facts:** The body of the indictment was so cryptic, it denied me a fair trial.  The indictment substituted a different and distinct offense from the one charged at trial and trial counsel objected to the charge being upgrade without a second offense warrant or indictment because the grand jury had not indicted me on the substituted offense.

-4-

**Ground Seven:** Due Process violation (mistaken identity).

**Supporting Facts:** The only description the SLED agent had was a fair skinned tall black male.  She testified she seen me for 1-2 minutes the first time on January5, 2001 and comes to court on October 22, 2001 and says she remembers me.  The prosecuting officer was in the surveillance car with the other officers listening to the drug transactions, but her requested a rap sheet for somebody else.  The informant used his testimony for leniency.

**Ground Eight:** Ineffective assistance of appellate counsel.

**Supporting Facts:** Counsel misled me in believing that counsel had paper work dealing with my case, but it was never presented.  The attorney general office and the Marlboro County Clerk of Court sent a letter to counsel stating that I didn't have nothing altered or amended to my first conviction relief application and I showed counsel that I did, but he still didn't admit it.

**Ground Nine:** 14th Amendment violation.

**Supporting Facts:** The solicitor's case consisted solely on an agent's testimony about the purchased narcotics from the applicant but the agents had to refresh their memories from notes, etc.  The C/I who acted as a witness for the State did not remember the type of car they were in nor could he remember crucial details of events that the police said took place that day.  The C/I had a 5 page rap sheet and more now with criminal domestic violence, drug charges, DUIs, stalking, burglaries and more, but the state says this is a credible witness.

## IV.  SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In Celotex, the Court held the defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner had failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## V.    STANDARD OF REVIEW

Since Williams filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that

was based on an unreasonable determination of the facts in light of
the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (1ˢᵗ Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the Petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

 The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.

## VI.    PROCEDURAL BAR

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

**A.	Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C.§ 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

> (b)(1)	An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(I) there is either an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2)	An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)	A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)	An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court.  When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241,251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act . . .

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal, See SCAR 207 and Blakeley v. Rabon, 266 S.C. 68,221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). See S.C. Code Ann.§17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). However, if petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. Rose 455 U.S. at 515.

### B. Procedural Bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, supra, quoting Wainwright v. Syke s, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

### C.     Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  A federal court is barred from considering the  filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert.denied, 118 S.Ct. 102 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

### D.     Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure,  Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective

assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1988).

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

In the case of Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied 517 U.S.1171 (1996), 116 S.Ct. 1575 (1996), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. See Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## VII.    ANALYSIS

### A.    Procedural Bar

Respondent argues that Grounds two, three, four, five and seven are procedurally barred.

#### 1.    Ground Two

In Ground two, Petitioner asserts a Brady violation in that documents were not turned over until the day of trial or years after his trial.

No Brady claim was raised at trial and, thus, was not preserved for direct appeal. Petitioner did not originally assert a Brady violation in his application for PCR. He later asserted Prosecutorial Misconduct/Brady violation in his Notice of Motion to Amend. However, no Brady violation was raised at the evidentiary hearing and the PCR judge did not rule upon any such issue. In Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007), the South Carolina Supreme Court clarified that if a PCR court's order summarily dismisses grounds without making factual findings and conclusions of law as required by S.C. Code Ann. Section 17-27-80 (2003), and collateral counsel does not make a SCRCP Rule 59(e) Motion to correct the error in the Order, then the issues are not preserved for appeal. Id. (citing Humbert v. State, 345 S.C. 332, 548 S.E.2d 862 (2001); Pruitt v. State, 310 S.C. 254, 423 S.E.2d 127 (1992)). Thus, since Petitioner did not properly present this claim to the state's highest court in a procedurally viable manner when he had the opportunity, and the state courts would find any attempt to raise the claim now to be procedurally improper, then the claim is procedurally barred from review in federal habeas corpus. See, e.g. Coleman v. Thompson, 501 U.S. 722 (1991) (issue not properly raised to the state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas).

## 2. Ground Three

In Ground three, Petitioner asserts prosecutorial misconduct for entering an inaudible tape into evidence and withholding paperwork.

At trial, the defense objected when the State sought to introduce in reply a copy of the audiotape of the drug transaction. All sides agreed it was inaudible, but the judge ruled it was permissible in reply since the defense had questioned the officers on whether or not a "body wire" had been employed. The State did not wish to play the tape in court, but suggested providing a tape recorder for the jury if they wished to listen during deliberation. The tape was sent back to the jury

but it does not appear it was played in court. {PCR App. 148-62; 194}. Counsel argued in closing that he forced the State to bring the tape against its will, that the tape was inaudible, and that this amounted to reasonable doubt. {PCR App. 175-76}.

The issue of prosecutorial misconduct was not originally raised in Petitioner's PCR application. Petitioner subsequently filed a "Notice of Motion to Amend" in which he makes a claim for prosecutorial misconduct inasmuch as he claimed the SLED agent removed the tape from evidence and the portion recording the drug transaction became inaudible.

At the PCR hearing, Petitioner testified the tape was never played for the jury, and asserted it could not have been a tape of him selling drugs as he was innocent. {PCR App. 230-31}. On cross, Petitioner stated he knew the tape existed, but did not get to listen to it. He admitted he did not ask to listen to it. {PCR App. 235}.

In closing, Petitioner's PCR counsel argued that counsel was ineffective for failing to ensure the tape was played for the jury. {PCR App. 259-61}. The PCR judge noted the tape was not before him to judge any effect it may have had, but regardless all agreed it was inaudible. {PCR App. 265}. The written order similarly found Petitioner had not met his burden of proof inasmuch as the tape was not before the PCR court to judge any effect it may have had. {PCR App. 284-85}.

The only issue raised at trial regarding the audiotape was that it was beyond the scope of reply for the State to introduce the tape, which the judge overruled. No issue of prosecutorial misconduct was raised and, thus, was not preserved for direct appeal. The only issue litigated at PCR and ruled upon by the PCR judge was whether counsel was ineffective for failing to ensure the tape was actually played in court. The PCR court did not rule upon the issue of prosecutorial misconduct. Thus, the claim of prosecutorial misconduct raised in the Notice of Motion to Amend regarding evidence tampering was not preserved for PCR appeal. Marlar v. State, 375 S.C. 407, 653

-14-

S.E.2d 266 (2007), <u>Humbert v. State</u>, 345 S.C. 332, 548 S.E.2d 862 (2001); <u>Pruitt v. State</u>, 310 S.C.

254, 423 S.E.2d 127 (1992))  <u>Plyler v. State</u>, 309 S.C. 408, 424 S.E.2d 777 (1992) (issue must be

both raised to and ruled upon by PCR judge to be preserved for appellate review); Rule 59(e),

SCRCP (providing avenue for any party to move to alter or amend a judgment). Thus, since

Petitioner did not properly present this claim to the state's highest court in a procedurally viable

manner when he had the opportunity, and the state courts would find any attempt to raise the claim

now to be procedurally improper, then the claim is procedurally barred from review in federal habeas

corpus. <u>See</u>, <u>e.g.</u> <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991) (issue not properly raised to the state's

highest court, and procedurally impossible to raise there now, is procedurally barred from review in

federal habeas).

### 3. Ground Four

In Ground four, Petitioner asserts a disclosure violation regarding chain of custody forms.

Petitioner asserts that chain of custody forms A, B, and C were not turned over during discovery.

This claim is procedurally barred for the same reason as Ground two, in which Petitioner asserts a

Brady violation generally.  The issue was not raised to or ruled upon by either the trial court or the

PCR court.  Thus, since Petitioner did not properly present this claim to the state's highest court in

a procedurally viable manner when he had the opportunity, and the state courts would find any

attempt to raise the claim now to be procedurally improper, then the claim is procedurally barred

from review in federal habeas corpus. <u>See</u>, <u>e.g.</u> <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991) (issue

not properly raised to the state's highest court, and procedurally impossible to raise there now, is

procedurally barred from review in federal habeas).

### 4. Ground Five

In Ground five, Petitioner asserts an Eighth Amendment claim for cruel and unusual punishment, asserting that he was convicted of an offense for which he was never arrested or indicted. No such claim was raised at trial and, thus, was not preserved for direct appeal. Additionally, Plaintiff did not raise an Eighth Amendment claim at PCR. Although he did assert a claim as to being sentenced as a second offender as a subject matter jurisdiction claim at PCR, it was not raised in the context of an Eighth Amendment cruel and unusual punishment claim. Thus, since Petitioner did not properly present this claim to the state's highest court in a procedurally viable manner when he had the opportunity, and the state courts would find any attempt to raise the claim now to be procedurally improper, then the claim is procedurally barred from review in federal habeas corpus. See, e.g. Coleman v. Thompson, 501 U.S. 722 (1991) (issue not properly raised to the state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas).

### 5. Ground Seven

In addition, Respondent asserts that Ground seven was not raised at nor ruled upon by the PCR court at the hearing or in the order. Nor was a due process claim raised at trial to be presrved for direct appeal. Thus, since Petitioner did not properly present this claim to the state's highest court in a procedurally viable manner when he had the opportunity, and the state courts would find any attempt to raise the claim now to be procedurally improper, then the claim is procedurally barred from review in federal habeas corpus. See, e.g. Coleman v. Thompson, 501 U.S. 722 (1991) (issue not properly raised to the state's highest court, and procedurally impossible to raise there now, is

procedurally barred from review in federal habeas).[2]

Petitioner does not assert any cause for failure to raise these claims or actual prejudice resulting from the failure.

**B.      Merits**

**1.      Ground One**

Petitioner asserts ineffective assistance of counsel in Ground one of his habeas petition. He states generally that, after receiving his file, he realized that it had evidence that his counsel never presented to him or to the court. Petitioner does not assert which documents were not presented to him or the court. However, at the PCR hearing, Petitioner contended his counsel "wasn't presented with a lot of the paperwork they had against me, and he wasn't presented with the full rap sheet of employment, and he wasn't – it's just a lot of paperwork missing from his files, and with the rap sheet requested for another individual." {PCR App. 231}. On cross, Petitioner added that when he got his file, it had (1) SLED paperwork showing two people had possession of the drugs, (2) paperwork showing the tape of the transaction had been removed from the evidence custodian and then put back in, (3) paperwork showing the drugs had been tested on three occasions, and (4) a rap sheet showing the confidential informant had more charges than to which he testified. {PCR App. 235}.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 n .14 (1970). In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth two factors that must be

_____

[2]Even if this Ground is not procedurally barred, it fails on the merits for the same reasons discussed in Ground nine below because this Ground challenges the credibility of the evidence.

considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir.1985). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, 466 U.S. at 694. The Strickland Court further held that

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct ... the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

Id. at 695.

With regard to the rap sheet, counsel testified that a CI or confidential informant was really irrelevant as Petitioner made the actual sale to an undercover SLED agent, although counsel noted that did he go over the rap sheet of the informant who accompanied the SLED agent. {PCR App. 239-40}. Counsel testified he was unsure to which documents Petitioner was referring that they allegedly did not have, noting that he did in fact have the documents regarding the SLED drug analysis. {PCR App. 240}. Counsel noted he received all the Rule 5 discovery and went over it with

Petitioner at the jail. {PCR App. 246}. Counsel saw no issues with the chain of custody. {PCR App. 254}.

In closing, PCR counsel only argued that Petitioner had testified there were documents that showed the State failed to keep a proper chain of custody. {PCR App. 261}. The State argued that no SLED documents were presented at the hearing to establish an alleged fault in the chain. {PCR App. 263}. The PCR court orally found no evidence had been presented showing counsel was ineffective with regard to the chain of custody. {PCR App. 265}. In the written order, the judge found trial counsel's testimony credible but Petitioner's testimony not to be credible, and concluded no evidence had been presented as to a defect in the chain. {PCR App. 284}.

Petitioner raised complaints about the chain and his counsel's handling of it in the collection of documents he submitted on PCR appeal. The state supreme court denied certiorari.

Although counsel did not raise the rap sheet issue in his closing at the PCR hearing, the PCR judge did orally find that there was nothing to indicate that the CI's record was anything other than what he testified to at trial. {PCR App. 265}. In the written order, the PCR judge mentioned the conflicting testimony from counsel and Petitioner and found counsel to be credible. {Tr. 283-84}.

Counsel's representation did not fall below an objective standard of reasonableness. Counsel examined Petitioner on the fact that he was paid every time he "rolled" a drug dealer. {PCR App. 60-61}. Both the solicitor and counsel examined the informant on his prior convictions, and no evidence was presented of any charges the CI had on which examination was not had. {PCR App. 52-53; 61}. Furthermore, even if the CI was not properly impeached on his criminal record, in light of the fact that an undercover agent was present for and participated in the buy from Petitioner, there is no reasonable probability that the outcome of the trial would have been different.

Regarding chain of custody, the PCR court found that no actual evidence was submitted showing any failure in the chain that could have been exploited by counsel. As such, Petitioner failed his burden of proof and the state courts were not objectively unreasonable in rejecting the claim. Beaver v. Thompson, 93 F.3d 1186, 1995 (4th Cir. 1996) (rejecting claim that counsel was ineffective for failing to present mitigation evidence from family members, where there was no proffer of this testimony); Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990) (petitioner's allegation that attorney did ineffective investigation does not support relief absent proffer of the supposed witness's favorable testimony).

The other evidence Petitioner mentioned on cross-examination at PCR, paperwork showing the audio tape of the transaction had been removed from the evidence custodian and then put back in, and paperwork showing the drugs had been tested on three occasions, was not argued by counsel during his closing at the PCR hearing, nor did the PCR judge address it orally or in his written order. Thus, those issues are procedurally barred. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007), Humbert v. State, 345 S.C. 332, 548 S.E.2d 862 (2001); Pruitt v. State, 310 S.C. 254, 423 S.E.2d 127 (1992)) Plyler v. State, 309 S.C. 408, 424 S.E.2d 777 (1992) (issue must be both raised to and ruled upon by PCR judge to be preserved for appellate review); Rule 59(e), SCRCP (providing avenue for any party to move to alter or amend a judgment).

In conclusion, the undersigned finds that there was no constitutional violation denying effective assistance of counsel as alleged in Ground one of Petitioner's claim for the reasons set forth above. The undersigned finds that counsel met the reasonableness test of Strickland. Certainly, Petitioner has failed, assuming arguendo there was error, to show the result was fundamentally unfair or unreliable. Therefore, based on the above, Ground one is without merit and is appropriately denied for habeas corpus consideration. Thus, it is recommended that the Respondents' Motion for Summary

Judgment be granted on this issue.

### 2. Ground Six

Petitioner raises subject matter jurisdiction in Ground six. He asserted that the body of the indictment was so cryptic, it denied him a fair trial, and the indictment substituted a different and distinct offense from the one charged at trial. Essentially, Petitioner appears to be asserting that there is a subject matter jurisdiction issue because there was not a warrant or indictment specifically charging him with a second offense.

Under South Carolina law, prior convictions are not an element of the offense charged but are merely sentence enhancers. As the PCR court found, they do not need to be alleged in the indictment. See Carter v. State, 495 S.E.2d 773 (S.C. 1998) (section 44-53-375 merely provides enhanced penalties for certain drugs); State v. Scriven, 529 S.E.2d 71 (S.C. Ct. App. 2000) (prior convictions were not an element of drug distribution offense). A state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter cognizable in federal habeas corpus. Wright v. Angelone, 151 F.3d 151 (4th Cir.1998); Wills v. Egeler, 532 F.2d 1058, 1059 (6th Cir.1976) (a "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary"). See also Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (holding "it is not the province of a federal habeas corpus court to reexamine state court determinations on state-law questions.") Accordingly, it is recommended that Respondent's Motion for Summary Judgment be granted as to Ground six.

### 3. Ground Eight

Petitioner asserts ineffective assistance of appellate counsel in Ground eight. Petitioner contends his "appellate counsel" was ineffective for failing to believe him that he had documents

showing he had moved to alter or amend his PCR order, when the county clerk and the Attorney General's Office wrote letters saying he had not.

This issue apparently refers to his appellate counsel on PCR appeal, given its reference to moving to alter or amend the PCR order, and to involvement of the Attorney General's Office. There is no constitutional right to effective assistance of counsel in state post-conviction proceedings. See generally Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Coleman v. Thompson, 501 U.S. 722 (1991); Mackall v. Angelone, 131 F.3d 442 (4th Cir. 1997). Further, alleged defects in state post-conviction procedures are not cognizable in a federal habeas corpus action. Wright v. Angelone, 151 F.3d 151 (4th Cir. 1998); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors and irregularities in connection with state postconviction proceedings are not cognizable on federal habeas review). Therefore, this issue should be dismissed.

### 4.     Ground Nine

In Ground nine, Petitioner attacks the credibility of the evidence presented against him at trial. Plaintiff claims that the agent that participated in the drug buy had to refresh his memory at trial with notes. He also complains that the CI could not remember the type of car they were in nor could he remember crucial details of events the police say took place that day. Both the CI and the SLED agent identified Petitioner as the seller of the substance that was identified by the lab as crack. Other officers involved in surveillance or logistics with regard to the controlled buy provided corroborating evidence.

In a due process context, "the critical inquiry on review of the sufficiency of the evidence . . . must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. . . . The relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19 (1979). The state court found that the record evidence reasonably supports a finding of guilt beyond a reasonable doubt, and such a finding is an objectively reasonable application of clearly established federal law. Thus, Ground nine is without merit and summary judgment is appropriate.

## VIII.  CONCLUSION

As set forth above, each of the Grounds raised by Petitioner in his federal habeas corpus petition is procedurally barred or without merit. It is therefore recommended that Respondent's Motion for Summary Judgment (Document # 20) be granted in its entirety and the petition be dismissed.

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 6, 2009
Florence, South Carolina

**The parties are directed to the important notice on the following page.**